UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

In re:                                )        No. 1:07-CV-11
                                      )
TARGET GRAPHICS, INC.                 )        Chief Judge Curtis L. Collier

**MEMORANDUM**

Before the Court is Target Graphics, Inc.'s ("Target") motion for review of the United States Bankruptcy Court for the Eastern District of Tennessee at Chattanooga ("Bankruptcy Court") denial of motion for a stay of orders pending appeal (Court File No. 5) as well as a supporting memorandum of law (Court File No. 6). Merrill Lynch Business Financial Services, Inc. ("Merrill Lynch") filed a response brief in opposition (Court File No. 7). The Court heard oral arguments on Target's motion on May 31, 2007. After carefully considering the record, the controlling law, as well as the parties' briefs and arguments, the Court does not believe the Bankruptcy Court erred or abused its discretion in denying Target's motion for a stay pending appeal. Accordingly, the Court will **AFFIRM** the Bankruptcy Court's order denying Target's motion for stay pending appeal and will not stay the orders Target is appealing.

**I.      RELEVANT FACTUAL and PROCEDURAL HISTORY**

Target is a printing company located in Chattanooga, Tennessee that has been operating since 1919 (Court File No. 6). It has over twenty employees, some who have been with the company for over thirty years (*Id.*). Merrill Lynch is Target's major secured creditor and holds a security interest in all of Target's assets to secure payment of three (3) debts totaling $1,936,489.41 (Court File No. 7). Merrill Lynch's total lien claim exceeds the value of its collateral, therefore, it is undersecured (Court File No. 1, Attachment 21).

Target filed a voluntary petition for Chapter 11 bankruptcy on June 28, 2005 in Bankruptcy Court (Court File No. 7). During the pendency of the case, Target has made no payments to Merrill Lynch while it continued to use the collateral which secures Merrill Lynch's claims (*Id.*). Target did not file a plan of reorganization until almost nine months after filing bankruptcy; therefore, Merrill Lynch filed a motion for relief from the automatic stay on March 16, 2006 asking the Bankruptcy Court to allow it to repossess the collateral (Court File No. 1, Attachment 2, Bankruptcy Court Docket Sheet). Thereafter, Target filed a plan of reorganization on March 20, 2006 (*Id.*). Target was unable to obtain the necessary support for its plan, therefore the Court granted it leave to file an amended plan, which it filed on June 23, 2006 (Court File No. 1, Attachment 8). Merrill Lynch filed an objection to the amended plan contending it violated the absolute priority rule and it improperly valued Merrill Lynch's secured claim (Court File No. 7).

The Bankruptcy Court held a hearing on confirmation of Target's amended plan as well as on Merrill Lynch's motion for relief from the automatic stay on October 18, 2006 (Court File No. 1, Attachment 2).[1] After the hearing, on November 7, 2006 the Bankruptcy Court entered a memorandum opinion and order denying confirmation of Target's amended plan of reorganization based on the violation of the absolute priority rule and the failure to properly value Merrill Lynch's secured claim ("November 7 order") (Court File No. 1, Attachments 21 & 22). The Court also granted Merrill Lynch relief from the automatic stay (*Id.*). Target then filed a motion to alter or amend and/or for a new trial, which the Bankruptcy Court denied in a memorandum opinion and order dated December 11, 2006 ("December 11 order") (Court File No. 1, Attachments 36 & 37).

---

[1] The parties agreed to hear both issues, confirmation of the amended plan and Merrill Lynch's motion for relief from the automatic stay, at this hearing (Court File No. 6, Attachment 2).

Target appealed the November 7 and December 11 orders to this Court (Court File No. 1, Attachment 38, Notice of Appeal).[2] Thereafter, Target filed a motion requesting stay of the briefing schedule contained in the Federal Rules of Bankruptcy Procedure pending receipt of the transcripts from the hearings concerning the orders Target was appealing (Court File No. 3). On March 6, 2007, the Court granted Target's motion and suspended the appellate briefing schedule pending receipt of the hearing transcripts (Court File No. 4). The Court also ordered the briefing schedule shall commence upon receipt of the transcripts and set a hearing on the merits of the appeal for June 13, 2007 (*Id.*). The clerk received the hearing transcripts on March 12, 2007 (Court File No. 1).

On December 21, 2006 Target filed a motion for stay of the Bankruptcy Court's November 7 and December 11 orders pending appeal (Court File No. 6, Attachment 1). After oral argument, the Bankruptcy Court denied that motion by memorandum opinion and order dated March 16, 2007 ("March 16 order") (Court File No. 6, Attachment 2). Target then filed the instant motion requesting review and reversal of the Bankruptcy Court's denial of its motion for stay in this Court on March 19, 2007 (Court File No. 5). Merrill Lynch filed a response brief on April 5, 2007 (Court File No. 7). At Target's request this Court heard oral argument on this motion on May 31, 2007 (Court File No. 9).

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Bankruptcy Procedure 8005 ("Rule 8005"), Target requests this Court to review the Bankruptcy Court's denial of its motion for a stay pending appeal of the two

---

[2] The Notice of Appeal was transmitted to this Court on January 10, 2007 (Court File No. 1).

3

orders which it is appealing. Rule 8005 provides:

> Stay pending appeal: A motion for a stay of the judgment, order, or decree of a bankruptcy judge, for approval of a supersedeas bond, or for other relief pending appeal must ordinarily be presented to the bankruptcy judge in the first instance. Notwithstanding Rule 7062 but subject to the power of the district court and the bankruptcy appellate panel reserved hereinafter, the bankruptcy judge may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest. A motion for such relief, or for modification or termination of relief granted by a bankruptcy judge, may be made to the district court or the bankruptcy appellate panel, but the motion shall show why the relief, modification, or termination was not obtained from the bankruptcy judge. The district court or the bankruptcy appellate panel may condition the relief it grants under this rule on the filing of a bond or other appropriate security with the bankruptcy court . . .

FED. R. BANKR. P. 8005. As evidenced by the Bankruptcy Court's March 16 order, Target has satisfied the procedural requirement of first seeking stay pending appeal in the Bankruptcy Court prior to seeking relief in this Court. "Where, as here, the trial court has considered and ruled on the request for a stay pending appeal, the role of the appellate court is limited; the appellate court simply determines whether the trial court abused its discretion." *In re Rhoten*, 31 B.R. 572, 577 (M.D. Tenn. 1982) (indicating it is important to a "properly functioning bankruptcy court that the trial judge's rulings on stays pending appeals be disturbed only in the event of error or abuse of discretion"). "The abuse of discretion standard is highly deferential. An abuse of discretion is found where the reviewing court is firmly convinced that a mistake has been made." *Rolen v. Hansen Beverage Co.*, 193 Fed.Appx. 468, 472 (6th Cir. 2006) (citations and quotation marks omitted). Therefore, the sole issue this Court must determine is whether the Honorable Bankruptcy Judge John C. Cook ("Judge Cook") abused his discretion in denying Target's motion for a stay pending appeal.

The criteria governing a motion for stay under Rule 8005, which are similar to the factors considered in the issuance of a preliminary injunction, include: (1) the likelihood of success on the

merits; (2) the likelihood of irreparable harm; (3) harm to others; and (4) whether the public interest will be served. *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991); *In re Bradford,* 192 B.R. 914, 917 (E.D. Tenn. 1966). Accordingly, in order to succeed, Target must show, by a preponderance of the evidence, it will likely prevail on the merits of its appeal, it will suffer irreparable injury if the stay is denied, other parties will not be substantially harmed by the stay, and the public interest will be served by granting the stay. *In re Level Propane Gases, Inc.*, 304 B.R. 775, 777 (N.D. Ohio 2004). These factors are interrelated considerations which must be balanced. *Griepentrog*, 945 F.2d at 153.

### III. DISCUSSION

#### A. Likelihood of Success on the Merits

A district court has jurisdiction to hear appeals from a Bankruptcy Court pursuant to 28 U.S.C. § 158. In determining such an appeal, the district court sets as an appellate court. *In re Bradford*, 192 B.R. at 915. "It reviews the Bankruptcy Court's findings of fact under a clearly erroneous standard, but conducts a *de novo* review of the Bankruptcy Court's conclusions of law." *Id*. (citing FED. R. BANKR. P. 8013; *In re Isaacman,* 26 F.3d 629, 630 (6th Cir.1994); *Harbour Lights Marina v. Wandstrat*, 153 B.R. 781 (Bank. S.D. Ohio 1993)); *see also In re Aultman Enterprise*, 264 B.R. 485, 487 (E.D. Tenn. 2001). When a question involves a mixed question of law and fact, the court "must break it down into its constituent parts and apply the appropriate standard of review for each part." *In re Batie*, 995 F.2d 85, 88 (6th Cir. 1993).

Since a movant seeking stay pending appeal will generally have greater difficulty in demonstrating a likelihood of success on the merits, the "movant need not always establish a high probability of success on the merits." *Griepentrog,* 945 F.2d at153-54 (citations omitted). As the

5

Sixth Circuit has explained:

> The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiffs will suffer absent the stay. Simply stated, more of one excuses less of the other. This relationship, however, is not without its limits; the movant is always required to demonstrate more than the mere "possibility" of success on the merits. For example, even if a movant demonstrates irreparable harm that decidedly outweighs any potential harm to the defendant if a stay is granted, he is still required to show, at a minimum, "serious questions going to the merits."

*Id*. (citations omitted). Therefore, the Bankruptcy Court correctly considered whether, at a minimum, Target presented "serious questions going to the merits."

As already noted, Target appealed: (1) Judge Cook's November 7 order which denied confirmation of Target's amended plan of reorganization and granted Merrill Lynch relief from the automatic stay, and (2) Judge Cook's December 11 order which denied Target's motion to alter or amend and/or motion for new trial (Court File No. 1, Attachment 38, Notice of Appeal). The underlying appeal involves four specific issues including whether the Bankruptcy Court erred: (1) in denying confirmation of Target's amended plan of reorganization based upon the fact that it did not satisfy the absolute priority rule; (2) in denying confirmation of Target's amended plan since it undervalued Merrill Lynch's secured claim; (3) in lifting the automatic stay as to Merrill Lynch; and (4) in denying Target's motion to alter or amend and/or for a new trial. The Court will consider these issues in order to determine whether the Bankruptcy Court abused its discretion in determining Target failed to raise "serious questions going to the merits" of its appeal.

### 1. Absolute Priority Rule

Merrill Lynch has a secured claim against Target totaling over $1.9 million. Both of Target's plans of reorganization valued Merrill Lynch's collateral at $613,532.50 and proposed to pay that sum, as a secured value, with 7.75% interest in quarterly payments of $37,101.99 (Court File No.

7). The balance of Merrill Lynch's claim was to be treated as an unsecured claim and was to be paid pro rata along with over $400,000.00 in other unsecured debt (*Id.*). The only difference between Target's original plan and its amended plan is that in its amended plan it proposed to pay an additional $40,000.00 to unsecured creditors from a capital contribution to be made by Target's president and sole shareholder, Daniell Klein (*Id.*). This $40,000.00 contribution was designed to serve as an exception to the "absolute priority rule."

The "absolute priority rule" requires that dissenting unsecured creditors must be paid in full if a junior claim holder is to retain its ownership interest under the reorganization plan. 11 U.S.C. § 1129(b)(2)(B)(ii); *see also In re Crosscreek Apartments, Ltd.*, 213 B.R. 521, 545 (Bankr. E.D. Tenn. 1997). It is undisputed Target's amended plan violated this rule. Target attempts to avoid the effects of the rule by relying on a well-noted exception to it. The "new value" exception provides the absolute priority rule is not a bar to confirmation if the shareholders "contribute new capital in money or money's worth, reasonably equivalent to the property's value, and necessary for successful reorganization of the restructured enterprise." *Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 442 (1999); *In re U.S. Truck Co.*, 800 F.2d 581, 588 (6th Cir. 1986). Under this exception, equity holders, such as shareholders, may own and control a reorganized business without paying impaired classes in full by exchanging new value to acquire ownership of the reorganized debtor. *In re Creekside Landing Ltd.*, 140 B.R. 713, 717 (Bankr. M.D. Tenn. 1992). In order for this exception to apply, the "new value" must be: (1) necessary or essential to the success of the reorganization, **AND** (2) reasonably equivalent to the interests retained, "a requirement which the Sixth Circuit characterized as 'substantial.'" *In re Crosscreek Apartments, Ltd.*, 213 B.R. at 546 (citing *In re U.S. Truck Co.*, 800 F.2d at 588 (indicating a

7

contribution of new value must be "essential and substantial")). A rigorous showing of these requirements is necessary as "the debtor probably has to prove that it cannot reorganize without new capital. Some courts have said that reorganization must be impossible without the new contribution." *In re Creekside Landing Ltd.*, 140 B.R. at 717 (citations omitted). The burden of proving these "new value" elements lies with Target, the plan proponent. *In re Crosscreek Apartments, Ltd.*, 213 B.R. at 546 (citing *In re: Montgomery Court Apartments of Ingham County, Ltd.*, 141 BR 324, 346 (Bankr. S.D. Ohio 1992)).

Target argues the $40,000.00 contribution was sufficient to satisfy the "necessary or essential" element of the "new value" exception. However, the Bankruptcy Court found Target did not carry its burden of showing the capital contribution is necessary for a successful reorganization of the enterprise. Whether a capital contribution is necessary or essential to the reorganization, so that the "new value" exception is applicable, is an issue of fact, which shall not be set aside on appeal unless clearly erroneous. *See In re U.S. Truck Co., Inc*., 800 F.2d at 588 (applying the clearly erroneous standard to a district court's determination of whether a capital contribution was "essential"). Additionally, this Court must give due regard to the Bankruptcy Court's credibility determinations. FED. R. BANKR. P. 8013. The Bankruptcy Court held a hearing on these issues and heard evidence. It found Target's assertions and/or beliefs regarding this issue were unsubstantiated. Specifically, at the hearing Target's owner asserted he "believes" trade creditors would be more likely to sell to the debtor on credit terms if the $40,000.00 capital contribution is made.[3] However, the Bankruptcy Court found Target offered no substantiated evidence that the unsecured creditors,

---

[3] Target's owner testified he "hoped" confirmation would result in Target receiving pre-bankruptcy credit terms from vendors and he "believed" the capital contribution would assist in that regard (Oct. 18, 2006 Hearing Tr. at p. 86-87).

by receiving an increased distribution, would be more likely to extend credit to Target. This finding is not clearly erroneous as Target had the burden of establishing the $40,000.00 contribution satisfies the requirements necessary for the "new value" exception to apply. Accordingly, this Court finds the Bankruptcy Court did not abuse its discretion in determining Target failed to raise a "serious question going to the merits" of its appeal since it failed to met the "necessary or essential" element of the "new value" exception to the absolute priority rule.[4]

Target also contends the Bankruptcy Court erred in finding the $40,000.00 capital contribution was not "substantial" and thus failed to satisfy the "new value" exception. Target argues the Bankruptcy Court erred in relying upon Seventh and Ninth Circuit cases in support of the methodology it used to determine substantiality. Specifically, Target argues the contribution could be characterized as "substantial" under methods employed by courts within the Sixth Circuit. In its March 16 memorandum opinion and order, the Bankruptcy Court stated Target "misses the point" by making these arguments (Court File No 6, Attachment 2). The Bankruptcy Court indicated it based its denial of confirmation of Target's amended plan on the fact that Target failed to met its burden of proof on the "necessary or essential" element of the "new value" exception. A review of the November 7 memorandum opinion confirms the Bankruptcy Court's discussion of substantiality was an alternative reason for its denial and was added to the memorandum opinion simply to

---

[4] Courts have sometimes found the "necessary or essential" element is met if the contribution is needed to enable the debtor to make payments due under the plan and continue operating. *In re Crosscreek Apts, Ltd.*, 213 B.R. at 546 n. 31. Target argues the sole fact that the $40,000.00 contribution was going to be used to make payments under the plan should have been enough for the Bankruptcy Court to find the contribution was "necessary or essential." However, this Court was unable to locate any authority and Target cites none which stands for the proposition that *any* contribution to a plan for payment automatically satisfies the "necessary or essential" requirement.

"further enhance the point" (Court File No. 6, Attachment 2).[5]

The Bankruptcy Court's denial of confirmation of Target's amended plan of reorganization based upon its factual determination that the $40,000.00 capital contribution was not "necessary or essential" to Target's successful reorganization and therefore, the "new value" exception to the absolute priority rule was not met was not clearly erroneous. Thus, the Bankruptcy Court did not abuse its discretion in finding Target failed to raise a "serious question going to the merits" of its appeal concerning the Bankruptcy Court's denial of confirmation of its amended plan.[6]

### 2. Lifting of Automatic Stay

Target also argues on appeal the Bankruptcy Court erred in granting Merrill Lynch's motion for relief from the automatic stay. Pursuant to 11 U.S.C. § 362(g), the party requesting relief from the automatic stay has the burden of proof on the debtor's equity in the property and the party opposing relief has the burden of proof on all other issues. The Bankruptcy Court found the proof established Target had no equity in the property; however, there was *no proof* there was a reasonable probability of a successful reorganization within a reasonable time.[7] As the Bankruptcy Court noted,

---

[5] Specifically, in the November 7 memorandum opinion, the Bankruptcy Court placed its discussion of the "substantiality" issue after it concluded Target failed to met the first element of the "new value" exception. Additionally, the Bankruptcy Court began the paragraph discussing the "substantiality" issue with the word "moreover," which is defined in Webster's dictionary as "in addition to what has been said; further; besides" (Court File No. 1, Attachment 21).

[6] The Bankruptcy Court also denied confirmation of Target's amended plan based upon the fact that it undervalued Merrill Lynch's secured claim and thus is not "fair and equitable." *See* 11 U.S.C. § 1129(b)(1). The Court does not believe the Bankruptcy Court abused its discretion in determinating that Target's issues on appeal do not raise "serious questions" since Target's own appraisal exceeds the amount of the secured claim stated in its amended plan, i.e., Target's own evidence showed it undervalued Merrill Lynch's secured claim.

[7] "On request from a party in interest and after notice and a hearing, a court may grant relief from the automatic stay . . . if (A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization. Once a movant under 11 U.S.C. section

this Chapter 11 case had been pending for more than 16 months at the time of the confirmation hearing, Target offered two plans (both of which violated the absolute priority rule and could not be confirmed), and Target lost the exclusive right to propose a plan more than a year ago (Court File No. 1, Attachment 21, November 7 memorandum opinion). Accordingly, based upon Target's failure to satisfy its burden of proof, the Bankruptcy Court granted Merrill Lynch's motion for relief from the automatic stay.

Merrill Lynch filed its motion for relief from the automatic stay in March 2006. It was passed seven times and the parties finally agreed to hear the motion at the confirmation hearing held in October of 2006 (Court File No. 6, Attachment 2). Even though the parties agreed the motion for relief from the stay would be heard and decided in conjunction with the confirmation hearing on Target's amended plan, at the hearing, they did not argue the motion for relief from the automatic stay.[8] Target argues this factor alone warrants reversal on appeal. However, Target had the burden of proving relief from the stay was not warranted and it admits to agreeing the hearing on the motion for relief would be conducted at the confirmation hearing (Court File No. 6). Accordingly, Target's failure to meet its burden of proof is not grounds for reversal on appeal. As Target presented no evidence concerning this issue, the Bankruptcy Court clearly did not abuse its discretion in finding

---

362(d)(2) establishes that it is an undersecured creditor, it is the burden of the debtor to establish that the property is necessary for an effective reorganization. This requires not just a showing that if there is conceivably to be an effective reorganization, that property would be needed for it, but that the property is essential for an effective reorganization *that is in prospect.* This means that there must be a reasonable possibility of a successful reorganization within a reasonable time." *In re PMS Associates No. 2,* 104 B.R. 86, 89 (Bankr. S.D. Ind. 1989) (citing 11 U.S.C. section 362(d)) (internal citations and quotation marks omitted).

[8] There is an entry on the Bankruptcy Court's docket sheet setting the hearing on Merrill Lynch's motion for relief from the automatic stay for October 18, 2006 (Court File No. 1, Attachment 2).

Target failed to raise a "serious question going to the merits" of its appeal concerning this issue.

### 3. Denial of Motion to Alter or Amend

After the Bankruptcy Court issued its November 7 memorandum opinion and order denying confirmation of Target's amended plan and grating Merrill Lynch relief from the automatic stay, Target filed a motion to alter or amend and/or motion for new trial.[9] Target asserts this motion was based upon its argument that the Bankruptcy Court erred in the application of law to the facts and the discovery that the Bankruptcy Court's clerk had a prior professional relationship with Merrill Lynch.[10]

Target argues if the Bankruptcy Court erred in its ruling concerning its amended plan's violation of the absolute priority rule, it follows that it also erred in its ruling on Merrill Lynch's motion for relief from the stay.[11] Consequently, both should be reversed. The Bankruptcy Court noted at the hearing on the motion to alter or amend and/or for new trial that neither party addressed

---

[9] Target also filed a motion requesting permission to further amend its plan. Target argues it believed the Bankruptcy Court would allow it to further amend its plan of reorganization after the trial. The Bankruptcy Court granted Target's motion to amend its plan and noted "there is nothing in the Bankruptcy Code to prevent a debtor in possession from filing a new plan in a pending Chapter 11 case following the denial of confirmation of a previous plan;" however, because "the stay has been vacated in this case, the reorganization efforts of the debtor can only go forward if the debtor and creditor Merrill Lynch Business Financial Services, Inc. come to an agreement on a consensual plan. Otherwise, the creditor is free to pursue its foreclosure rights . . ." (Court File No. 1, Attachment 36, December 11 memorandum opinion).

[10] Target filed a motion for recusal, which the Bankruptcy Court denied (Court File No. 1, Attachment 2). Specifically, Target contends that the Bankruptcy Court's law clerk represented Merrill Lynch while in private practice. Target argued this creates an appearance of impropriety and the Court should recuse itself. The Bankruptcy Court denied Target's motion for recusal. The Court admitted its law clerk did represent Merrill Lynch while in private practice over four years ago in a wholly unrelated matter. The Court found this was not a basis for recusal.

[11] Target also argues other Bankruptcy Courts have grated a stay pending appeal without a finding that their orders being appealed are incorrect. The Court finds this argument irrelevant.

Merrill Lynch's motion for relief from the automatic stay at the hearing on October 18, 2006, instead both parties focused on the confirmation issues. Since Target admits it did not address the motion at that hearing and since it had the burden of proof of showing why relief from the stay should not be granted, failure to argue these issues at the hearing is not grounds for reversal on appeal.

The Bankruptcy Court held oral argument on Target's motion to alter or amend. In ruling on the motion, the Bankruptcy Court stated its memorandum opinion which denied confirmation of Target's amended plan and granted Merrill Lynch's motion for relief from the stay was based upon the evidence presented at the trial (October 2006 hearing), the briefs and arguments of the parties, and the controlling law. Under Federal Rule of Civil Procedure 59(e) ("Rule 59") a court should grant a motion to alter or amend only "if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice . . . The rule was not designed to give an unhappy litigant an opportunity to relitigate matters already decided, nor is it a substitute for appeal . . . the debtor bore the burden of showing that alteration or amendment of the original judgment is appropriate." *In re Barclay*, No. 05-8019, 2006 WL 238139, *6 (B.A.P. 6th Cir. Feb. 1, 2006) (citations omitted). The Bankruptcy Court correctly determined Target failed to met these grounds. For the reasons already discussed, Target has failed to raise any "serious questions"which would cast doubt on the Bankruptcy Court's application of the standards for granting relief under Rule 59. Therefore, the Bankruptcy Court did not abuse its discretion regarding this issue.

**B.     Likelihood of Irreparable Harm**

Target argues it would be irreparably harmed if a stay is not granted since Merrill Lynch will foreclose on and liquidate its collateral and Target will no longer exist. Target argues the

community as well as its creditors will suffer economic harm and its employees will suffer loss of their jobs. Merrill Lynch does not dispute that if it repossesses Target's collateral, Target will suffer irreparable harm. However, Merrill Lynch argues any irreparable harm will be tempered by the fact that Target has no equity in the collateral. The Bankruptcy Court found the harm would be irreparable based upon the fact that if a stay is not issued, Target will lose all of its assets, its appeal would be mooted, and there would be no opportunity for Target to obtain a reversal of the Bankruptcy Court's orders. Overall, it is clear that a denial of a stay pending appeal would cause Target irreparable harm; however, in order for a stay pending appeal to be appropriate, Target is required to show, at a minimum, "serious questions going to the merits." *Griepentrog,* 945 F.2d at 153-54. The Bankruptcy Court did not abuse its discretion in finding Target failed to met this minimum standard, accordingly, the harm it will suffer does not justify the granting of a stay pending appeal.

### C. Harm to Others

Target contends a stay pending appeal to preserve the status quo will result in no harm to Merrill Lynch.[12] However, this is untrue since Target has not made any payments to Merrill Lynch since well before the Chapter 11 case was filed almost two years ago (Court File No. 7). Additionally, Merrill Lynch's equipment is used every day by Target and, therefore, it continues to depreciate (*Id.*). Since Target remains in possession of the collateral and Merrill Lynch is not currently receiving any type of payment, the Bankruptcy Court did not abuse its discretion in noting Merrill Lynch would be substantially harmed by a grant of stay pending appeal.

---

[12] Target also argues Merrill Lynch will recoup less if it forecloses on Target's assets then it would have under Target's amended plan of reorganization.

### D. Whether the Public Interest will be Served

In light of the fact that Target has failed to raise "serious questions" on appeal going to the merits, it is unnecessary to consider this issue. However, as the Bankruptcy Court noted, it is difficult to image how the public interest would be harmed by failing to grant a stay pending appeal since the dispute in this case is between a private debtor company with no equity in the collateral and its major secured creditor with a lien on virtually all of the debtor's assets.

### IV. CONCLUSION

For the foregoing reasons, this Court is not convinced the Bankruptcy Court erred or abused its discretion in denying Target's motion for a stay pending appeal. Accordingly, the Court will **AFFIRM** the Bankruptcy Court's order denying Target's motion for stay pending appeal and will not stay the orders Target is appealing.

An order shall enter.

**/s/**
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**